IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| JACKIE LEE DILLARD | ) | |
| | ) | |
| v. | ) | No. 3:17-0799 |
| | ) | |
| COMMISSIONER, SOCIAL SECURITY | ) | |
| ADMINISTRATION[1] | ) | |

To: The Honorable Aleta A. Trauger, District Judge

# REPORT AND RECOMMENDATION

Currently pending is Plaintiff's motion for judgment on the administrative record. *See* Docket Entry ("DE") 14. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of the final decision of the Social Security Administration ("Commissioner"). At issue is whether the administrative law judge ("ALJ") erred in finding that Plaintiff was "not disabled" and therefore not entitled to Disability Insurance Benefits ("DIB"). (*See* Administrative Transcript ("Tr.") at 18-20). This matter has been referred to the undersigned, pursuant to 28 U.S.C. § 636(b), for initial consideration and a report and recommendation. *See* DE 6.

Upon review of the administrative record and consideration of the parties' filings, I find no error that warrants reversal of the Commissioner's decision in this case and therefore recommend that Plaintiff's motion for judgment on the administrative record (DE 14) be **DENIED.**

---

[1] Nancy A. Berryhill was the Acting Commissioner of Social Security beginning January 23, 2017. However, her acting status ended as a matter of law pursuant to the Federal Vacancies Reform Act, 5 U.S.C. § 3345 *et seq.* Pursuant to Fed. R. Civ. P. 17(d), a public officer who is sued in an official capacity may be designated by official title rather than by name. Since Ms. Berryhill is no longer the Acting Commissioner, the Clerk is DIRECTED to identify Defendant by the official title rather than by name.

I. FACTS AND PROCEDURAL HISTORY

Plaintiff protectively filed an application for DIB on October 21, 2013 that alleged disability due to diabetes and neuropathy. (Tr. 60-61).[2] She alleged an onset date of November 15, 2012. (Tr. 61). Her application was denied initially and on reconsideration. (Tr. 60, 76).[3] Pursuant to her request for a hearing before an ALJ, Plaintiff appeared with counsel and testified at a hearing before ALJ Scott C. Shimer on December 17, 2015. (Tr. 34). On March 1, 2016, the ALJ denied the claim. (Tr. 18-20). On March 1, 2017, the Appeals Council denied Plaintiff's request for a review of the ALJ's decision. (Tr. 1-3). Therefore, the ALJ's decision stands as the final determination of the Commissioner.

As part of the decision, the ALJ made the following enumerated findings:

1. The claimant last met the insured status requirements of the Social Security Act on September 30, 2015.

2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of November 15, 2012 through her date last insured of September 30, 2015 (20 CFR 404.1571 *et seq.*).

3. Through the date last insured, the claimant had the following severe impairment: Diabetes type I (20 CFR 404.1520(c)).

4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except the claimant may frequently balance, stoop, kneel, crouch, and crawl. The claimant may not climb ladders, ropes, or scaffolds. There should be no concentrated exposure to

---

[2] Medical records revealed additional conditions, including carpal tunnel syndrome, a prior shoulder surgery, high cholesterol, and a history of strokes. (Tr. 111).

[3] The record also shows that Plaintiff filed a concurrent application for Supplemental Security Income (Tr. 68, 88), although she does not appear to have appealed the decision denying this application.

vibrations. She may not work at unprotected heights or around unguarded moving machinery.

6. Through the date last insured, the claimant was capable of performing past relevant work as a nursery school attendant (DOT # 359.677-018, Light SVP4). This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from November 15, 2012, the alleged onset date, through September 30, 2015, the date last insured (20 CFR 404.1520(f)).

(Tr. 23-29).

On appeal, Plaintiff submits two assertions of error: (1) that the ALJ's credibility determination is not supported by substantial evidence; and (2) that the ALJ improperly relied on vocational expert testimony provided in response to an incomplete hypothetical question. DE 14-1 at 6.

## II. ANALYSIS

### A. Standard of Review

On appeal, the Court is charged with determining whether the ALJ's decision is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as "more than a mere scintilla" and "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 28 L. Ed. 2d 842 (1971) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938)). If substantial evidence supports the ALJ's decision, that decision must be affirmed "even if there is substantial evidence in the record that would have supported an opposite conclusion." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). As explained by the Sixth Circuit:

> The Commissioner's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion. The

substantial evidence standard presupposes that there is a "zone of choice" within which the Commissioner may proceed without interference from the courts. If the Commissioner's decision is supported by substantial evidence, a reviewing court must affirm.

*Felisky v. Bowen,* 35 F.3d 1027, 1035 (6th Cir. 1994).

The Commissioner employs a five-step sequential evaluation process in considering whether a claimant is disabled. 20 C.F.R. § 404.1520(a). If the issue of disability can be resolved at any point in the evaluation process, the ALJ does not proceed to the next step and the claim is not reviewed further. *Id.* § 404.1520(a)(4). At step one, the claimant must show that she is not engaged in "substantial gainful activity" at the time disability benefits are sought; at step two, the ALJ considers whether one or more of the claimant's alleged impairments are "severe" in nature; at step three, the ALJ determines whether the impairments at issue meet or equal one of the Listings contained in the regulatory List of Impairments; at step four, the ALJ considers the claimant's residual functional capacity ("RFC") and determines whether the claimant can still perform past relevant work; and at step five, the burden of proof shifts to the ALJ to assess whether the claimant, after establishing that past relevant work is no longer possible, is capable of performing other types of work. *Id.* §§ 404.1520(a)(4)(i)-(v).

If the ALJ determines at step four that the claimant can perform past relevant work, the claimant is deemed "not disabled" and the ALJ need not complete the remaining steps of the sequential analysis. *Id.* § 404.1520(a). "Past relevant work" is defined as work that claimants have done within the past 15 years that is "substantial gainful activity" and that lasted long enough for the claimant to learn to do it. *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006) (citing 20 C.F.R. § 404.1560(b)(1)). If the claimant is incapable of performing past relevant work, however, the ALJ proceeds to step five to determine whether, in light of the claimant's RFC, age, education, and work experience, the claimant can perform other substantial

gainful employment and whether such employment exists in significant numbers in the national economy. In determining a claimant's RFC, the ALJ is required to consider the combined effect of all of the claimant's impairments, mental and physical, severe and nonsevere. 42 U.S.C. §§ 423(d)(2)(B), (5)(B).

The Court's review of the Commissioner's decision is limited to the record made during the administrative hearing process. *Willbanks v. Sec'y of Health & Human Servs.*, 847 F.2d 301, 303 (6th Cir. 1988). A reviewing court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (*Myers v. Richardson*, 471 F.2d 1265, 1268 (6th Cir. 1972)). The Court must accept the ALJ's explicit findings and determination unless the record as a whole is without substantial evidence to support the ALJ's determination. *Houston v. Sec'y of Health & Human Servs.*, 736 F.2d 365, 366 (6th Cir. 1984) (citing 42 U.S.C. § 405(g)).

### B. The Commissioner's Decision

The ALJ in the instant case resolved Plaintiff's claim at step four of the five-step process. Although Plaintiff was found to have met the first two steps, the ALJ determined at step three that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1, and was therefore not presumptively disabled. At step four, the ALJ found that Plaintiff was able to perform past relevant work and thus concluded that Plaintiff has not been under a disability since the alleged onset date of November 15, 2012. (Tr. 23-29).

**C. Assertions of Error**

**1. Credibility.**

In considering a claim for disability benefits, the ALJ is required to make a credibility determination with respect to the claimant's subjective complaints. *Siterlet v. Sec'y of Health & Human Servs.,* 823 F.2d 918, 920 (6th Cir. 1987). This determination must be supported by substantial evidence. *Calvin v. Comm'r of Soc. Sec.*, 437 F. App'x 370, 371 (6th Cir. 2011). The Sixth Circuit has observed, however, that a reviewing court should be "particularly reluctant" to substitute its judgment for that of the ALJ since the ALJ has "seen the claimant in the flesh" and has had the opportunity to observe her demeanor in person. *Bailey v. Sec'y of Health & Human Servs.*, 922 F.2d 841 (6th Cir. 1991) (quoting *Gooch v. Sec'y of Health and Human Servs.,* 833 F.2d 589, 592 (6th Cir. 1987) (per curiam), *cert. denied,* 484 U.S. 1075 (1988)).

The ALJ in this case provided a detailed discussion of the basis for his finding that Plaintiff's allegations regarding the severity of her diabetic condition were not entirely credible, including the lack of any significant medical findings in the record to support her claims, the extent of her daily activities, and the "routine and conservative" nature of her treatment. (Tr. 26-27). Plaintiff disputes these findings by claiming that the ALJ both failed to consider her inability to afford more aggressive treatment and omitted relevant evidence indicating that her daily activities were more limited than described in the opinion. DE 14-1 at 7-10.

The Court is unpersuaded by Plaintiff's contentions. With respect to Plaintiff's purported inability to afford treatment, it is true that Social Security Ruling ("SSR") 96-7p, which was in effect at the time of her application, requires the Commissioner to consider a claimant's ability to afford treatment when making a credibility determination. *See* SSR 96-7p, 1996 WL 374186, at

*8 (July 2, 1996).[4] Here, Plaintiff cites an inability to pay for more aggressive treatment due to lack of insurance, yet she identifies her primary insurance company and her prescription benefit plan on multiple documents in the administrative record. (*See* Tr. 239, 258-62, 267, 271, 273).[5] There is no indication in the record that Plaintiff was without insurance coverage between November of 2012 and September of 2015, which is the time period at issue (*see* Tr. 23), nor is there any evidence suggesting that she failed to seek treatment due to financial hardship during that timeframe. To the contrary, Plaintiff continued receiving treatment for diabetes throughout this period (*see* Tr. 211-13, 232, 237), during which she appears to have been covered by her husband's insurance plan. (*See* Tr. 258-62). Plaintiff even testified that it was her treating physician's discretion, and not a lack of funds, that explained the lack of aggressive treatment related to her alleged nerve pain. (Tr. 47).

Indeed, Plaintiff made no reference to an inability to pay for treatment during her hearing despite being questioned extensively by her own attorney about her alleged difficulty in managing her symptoms. (Tr. 42-47). There is also no evidence that she was denied any medication or treatment at any point during the relevant time period, nor any indication that any treatment was withheld or altered, due to financial hardship. The record instead demonstrates that Plaintiff continued receiving and using prescription medication, including Novolog, Lisinopril, Lantus, Pravastatin, and Levemir. (*See* Tr. 213, 218-19, 276). Such evidence supports the ALJ's findings regarding the conservative nature of her treatment. *Cf. Moore v. Comm'r of Soc. Sec.*, No. 14-1123-T, 2015 WL 1931425, at *3 (W.D. Tenn. Apr. 28, 2015) (holding that the

---

[4] SSR 96-7p was replaced by SSR 16-3p in March of 2016.

[5] Notably, Plaintiff attempts to bolster her argument by making multiple citations to the brief her attorney filed in support of her request for review by the Appeals Council. DE 14-1 at 8 (citing Tr. 202, 205). However, the referenced arguments from that brief similarly contain no citation to any evidence that would support her allegations.

7

ALJ properly discounted credibility of claimant based in part on lack of treatment in light of claimant's failure to establish that he was ever denied treatment due to an inability to pay).

The ALJ additionally stressed the lack of evidence supporting Plaintiff's claim that low blood sugar caused by her diabetic condition prevented her from working. (*See* Tr. 25-27, 42-45). The record shows that approximately two months after the alleged onset date, Plaintiff's treating physician, Dr. John Ch'ng, indicated that she was "well perfused" and "doing well." (Tr. 213). In August of 2013, she exhibited healthy blood glucose levels and reported "feel[ing] well." (Tr. 212). In August of 2014, Dr. Ch'ng noted that although her blood glucose levels tend to be higher after eating a meal with "excess carbs," they were otherwise "good" and Plaintiff was again "well perfused." (Tr. 218).

Interestingly, Plaintiff cites to multiple encounters in 2014 during which she demonstrated slightly *higher* blood glucose levels. (*See* Tr. 299, 302, 308, 317). Yet these spikes were attributed to Plaintiff's propensity for "snacking at night," eating an excessive amount of carbohydrates, being less physically active, and failing to take her prescription insulin analog as directed (Tr. 218, 298, 305, 312, 315), the latter of which provides additional support for the ALJ's determination. *See Marshall v. Comm'r of Soc. Sec.*, No. 13-cv-14255, 2015 WL 777940, at *11 (E.D. Mich. Feb. 24, 2015) (affirming ALJ's unfavorable credibility determination based on claimant's failure to avail himself of his prescription medication). Such evidence also contradicts Plaintiff's statement that she complies with her prescribed medication regimen (Tr. 43, 160), which further bolsters the ALJ's determination. *See Ranellucci v. Astrue*, No. 3:11-cv-0640, 2012 WL 4484922, at *11 (M.D. Tenn. Sept. 27, 2012) (noting that non-compliance with treatment is properly considered in analyzing a claimant's credibility).

The Court additionally notes that Dr. Ch'ng made only minor alterations to Plaintiff's insulin schedule, emphasizing that she should take the medication "consistently," and specifically stated that Plaintiff's condition was reasonably controlled. (Tr. 298, 315). He even noted during their last documented encounter that Plaintiff was "doing quite well." (Tr. 312). Plaintiff's argument that the ALJ failed to establish a "meaningful connection" between the evidence of record and his credibility determination is therefore unavailing.

Furthermore, the ALJ noted that Plaintiff could dress and bathe without assistance, prepare meals, and perform household chores (Tr. 26), and cited Plaintiff's own assertion that she has no issues with personal care. (Tr. 159). It was clearly appropriate for the ALJ to consider such evidence in assessing Plaintiff's credibility, *see* 20 C.F.R. § 404.1529(c) (listing "daily activities" as a factor in evaluating a claimant's subjective complaints), particularly in light of Plaintiff's assertion that she has difficulty "doing anything" with her right hand. (Tr. 49). Plaintiff responds generally by claiming that the ALJ "has not shown how these activities merit the adverse credibility finding" (DE 14-1 at 10), but this does little to fulfill her burden of establishing that the ALJ's finding lacks the support of substantial evidence. *See Boley v. Comm'r of Soc. Sec.*, No. CIV.A. 11-15707, 2012 WL 7748910, at *10 (E.D. Mich. Nov. 28, 2012), *report and recommendation adopted,* 2013 WL 1090531 (E.D. Mich. Mar. 15, 2013) ("Given the generalized nature of Plaintiff's credibility argument, the Court begins by emphasizing a matter of appellate procedure: it is Plaintiff's burden to demonstrate that the ALJ erred."). In fact, Plaintiff cites only her own testimony regarding the severity of her alleged symptoms, which itself tends to weigh against a finding that she suffers from disabling symptoms. *See* 20 C.F.R. § 404.1529(a) ("[S]tatements about your pain or other symptoms will not alone establish that you are disabled. There must be objective medical evidence from an

acceptable medical source that shows you have a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged[.]"). The Court emphasizes that in making a credibility determination, the ALJ "is not required to simply accept the testimony of a claimant if it conflicts with medical reports and other evidence in the record." *Christie v. Comm'r of Soc. Sec.*, No. 13-14408, 2015 WL 357044, at *6 (E.D. Mich. Jan. 27, 2015) (citing *Walters v. Comm'r of Soc. Sec.,* 127 F.3d 525, 531 (6th Cir. 1997)).

For example, Plaintiff claims that the ALJ ignored testimony that she cannot open jars due to her weak grip. DE 14-1 at 9-10. Plaintiff fails, however, to identify any authority requiring the ALJ to explicitly reference every statement made during her hearing. The Court also notes that the ALJ's failure to cite this particular testimony does not mean that it was excluded from his analysis. *Daniels v. Comm'r of Soc. Sec.*, 152 F. App'x 485, 489 (6th Cir. 2005) ("[A]n ALJ is not required to discuss all the evidence submitted, and an ALJ's failure to cite specific evidence does not indicate that it was not considered.") (internal citation omitted). Regardless, this claim is undermined by medical evidence in the record, including clinical findings indicating that she has normal strength in her upper extremities, normal upper extremity pinching grip strength, and normal fine and gross manipulation of the hands. (Tr. 206, 208). The ALJ clearly discussed such adverse findings in the opinion (Tr. 25), thus providing support for his credibility determination. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (holding that discounting credibility "is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence.").

In addition to the aforementioned evidence, the ALJ discussed the findings of Dr. Thomas Sweets, a consultative examiner who documented "discrepancies" between Plaintiff's allegations and his own examination findings. (Tr. 206). This discussion included Dr. Sweets'

indication that Plaintiff had a "very strong" scent of marijuana during her examination (Tr. 207), a claim that Plaintiff categorically denied during the hearing. (Tr. 53-54). While such evidence, without more, does not necessarily detract from her credibility, the Court notes that Plaintiff argued to the Appeals Council that "there is a logical explanation for [the smell of marijuana] as can be explained further in this brief[.]" (Tr. 203). This cryptic statement ostensibly refers to a separate section of the brief in which Plaintiff claims that she has been using "legal industrial grade hemp oil in an e-vaporizer" to treat her alleged nerve pain (Tr. 202), a claim that appears to contradict other testimony that she is "not taking anything for nerve pain." (Tr. 47). Such inconsistency is compounded by Plaintiff's failure to address the issue in her initial brief, as well as her failure to respond to the Commissioner's direct accusation of marijuana use. *See* DE 15 at 8, n.2.[6] In totality, such discrepancies tend to provide additional support for the ALJ's credibility determination. *See Gerhart v. Comm'r of Soc. Sec. Admin.*, No. 5:10-CV-2649, 2012 WL 1068986, at *6 (N.D. Ohio Mar. 29, 2012) (noting that inconsistent statements about alcohol and drug use are properly considered as part of a credibility evaluation) (internal citations omitted).

The Sixth Circuit has made clear that an ALJ's credibility finding "may not [be] disturb[ed] absent compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir. 2001). The undersigned finds that, based on the foregoing evidence, the ALJ's determination is supported by substantial evidence. I further note that, in contrast to Plaintiff's allegations regarding the severity of her symptoms, her treating physician has provided no indication that Plaintiff is subject to any work-related limitations due to her diabetic condition, instead opining that her

---

[6] The absence of response to the Commissioner's claim is especially vexing given that Plaintiff took the liberty of filing a "notice of no reply brief," which advised the Court that Plaintiff was opting to forego the filing of a reply brief because doing so "would merely be duplicative." DE 16 at 1.

symptoms are reasonably controlled. (Tr. 298). The Court thus finds no compelling reason to reverse the ALJ's conclusion.

### 2. Vocational expert testimony.

Plaintiff next contends that the ALJ failed to support his finding that she could perform past relevant work with substantial evidence. Specifically, Plaintiff claims that the vocational expert testimony on which the ALJ relied was provided in response to an "incomplete" hypothetical question. DE 14-1 at 10-11.

The regulations permit an ALJ to utilize a vocational expert at step four of the five-step evaluation to determine whether a claimant, in light of her RFC, can still perform past relevant work. *See* 20 C.F.R. § 404.1560(b)(2). Testimony from a vocational expert indicating that a claimant can perform past relevant work constitutes substantial evidence in support of an ALJ's finding that the individual is not disabled if the testimony is given in response to a hypothetical question that "accurately portrays [the claimant's] individual physical and mental impairments." *Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007) (internal citations omitted).

The hypothetical question at issue, which was ultimately adopted as part of the RFC (Tr. 24), stated the following:

> [A] person of the claimant's age, education, past work experience just described, and let's assume a light exertional level; with frequent balance, stoop, kneel, crouch, crawl, and ramps and stairs; but [] no climbing ladders, ropes, or scaffolding; no concentrated exposure to vibration; and let's say no working at unprotected heights or around unguarded moving machinery.

(Tr. 56). The vocational expert testified that Plaintiff would be able to perform her past job as a nursery school attendant with such restrictions. (Tr. 55-56). Plaintiff argues, however, that if the ALJ had "properly evaluated" her credibility, an appropriate hypothetical question "could have

12

been developed that accurately encompassed Plaintiff's severe limitations," which she identifies as a need to take unscheduled breaks and miss more than two days of work per month. DE 14-1 at 11.

The Court finds no error in the ALJ's step four finding. For one, Plaintiff incorrectly argues that the ALJ erred by excluding limitations relating to "impaired judgment and sudden exhaustion" despite determining at step two that her diabetic condition represented a severe impairment. To the contrary, such action was entirely appropriate since the identification of a severe impairment does not establish the existence of a work-related limitation. *See Griffeth*, 217 F. App'x at 429 ("A claimant's severe impairment may or may not affect his or her functional capacity to do work. One does not necessarily establish the other.") (internal citation omitted).

Moreover, Plaintiff cites no evidence suggesting that she would be required to take unscheduled breaks or miss multiple days of work each month, which is a burden that she bears. *See Key*, 109 F.3d at 274 ("Claimant has the ultimate burden of proving the existence of a disability.") (citing *Richardson v. Heckler*, 750 F.2d 506, 509 (6th Cir. 1984)). The ALJ nevertheless included these restrictions in a separate hypothetical question posed to the vocational expert, who testified that such limitations would preclude past relevant work (Tr. 56-57), but such restrictions were based solely on Plaintiff's testimony. This is significant because, as discussed *supra*, the ALJ's decision to discount Plaintiff's credibility is supported by substantial evidence; therefore, the ALJ was under no obligation to incorporate the vocational expert's answer to the second hypothetical into the RFC. *See Walton v. Comm'r of Soc. Sec.*, 60 F. App'x 603, 611 (6th Cir. 2003) (holding that after discounting Plaintiff's credibility, the ALJ "was not obligated to rely on the [vocational expert's] testimony that was given in response to a hypothetical question that was based on Plaintiff's credibility"). While the ALJ must accurately

convey all of the subject claimant's limitations to the vocational expert, such a rule "does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.,* 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005).

A vocational expert's testimony in response to an accurate hypothetical represents substantial evidence that the claimant has the vocational qualifications to perform specific jobs, including past relevant work. *Dyer v. Soc. Sec. Admin.*, 568 F. App'x 422, 428-29 (6th Cir. 2014) (internal citations omitted). In eliciting such testimony, the ALJ is "not required to accept a claimant's subjective complaints and may properly consider the credibility of a claimant[.]" *Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003) (quoting *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 476 (6th Cir. 2003)). The ALJ in this case appropriately discounted Plaintiff's credibility and adopted restrictions into the RFC that he deemed credible based on vocational expert testimony. Plaintiff fails to identify any evidence suggesting that she suffers from work-related limitations that are more severe than those included in the RFC, thus making remand a futile endeavor even if the ALJ had failed to support his step four finding with substantial evidence. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 507-08 (6th Cir. 2006) ("No principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that remand might lead to a different result.") (internal citation omitted). The Court therefore rejects this assertion of error.

## III. CONCLUSION

For the above stated reasons, it is recommended that Plaintiff's motion for judgment on the administrative record (DE 14) be DENIED and the Commissioner's decision be AFFIRMED.

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of the date of service of this Report and Recommendation or further

appeal is waived. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). Poorly drafted objections, general objections, or objections that require a judge's interpretation should be afforded no effect and are insufficient to preserve the right of appeal. *See Howard v. Sec'y of Health & Human Servs.,* 932 F.2d 505, 509 (6th Cir. 1991). A party may file a response to another party's objections within fourteen (14) days after being served with a copy thereof. Fed. R. Civ. P. Rule 72(b).

Signed By:
*J. Gregory Wehrman*
United States Magistrate Judge